(No. 12333.—Reversed and remanded.)

BLANCHARD BRO. & LANE, Appellant, *vs.* THE S. G. GAY COMPANY *et al.* Appellees.

*Opinion filed October 27, 1919.*

1. CORPORATIONS—*when appointment of a receiver may be attacked collaterally.* Where a court has jurisdiction both of the subject matter and the necessary parties its appointment of a receiver of a corporation cannot be assailed in a collateral proceeding however erroneous it may be, but where the court has no jurisdiction to entertain the bill and appoint the receiver with the powers given, the decree is void and is open to collateral attack.

2. SAME—*courts of chancery have only statutory power to appoint receivers.* Courts of chancery can appoint receivers of corporations only when expressly authorized by statute, and they have no general power to make such appointments.

3. SAME—*courts are not inclined to appoint receiver merely to preserve assets, on application of stockholders.* Courts are particularly disinclined to appoint a receiver for misconduct or mismanagement of a corporation, or for the purpose of merely preserving its assets, where the application is made by stockholders.

4. SAME—*stockholder cannot secure appointment of receiver to defeat action by the creditors.* While a stockholder may invoke the power of a court of equity to appoint a receiver where the corporation is fraudulently mismanaged by its officers, the stockholder cannot invoke the jurisdiction of the court to take charge of all the company assets by a receiver and thus defeat action by the creditors under section 25 of the Corporation act. (*People* v. *Weigley,* 155 Ill. 491, followed.)

5. SAME—*appointment of receiver to distribute assets is equal to dissolution of corporation.* Appointing a receiver to take possession of the assets of a corporation and to distribute them is tantamount to dissolving the corporation by decree in equity.

6. SAME—*when rule of caveat emptor applies to sale by receiver.* Where the court has no jurisdiction to appoint a receiver of the assets of a corporation the receiver acquires and can convey no title to any of the property, and in any judicial sale by the receiver the rule of *caveat emptor* applies.

7. SAME—*when defense that a creditor is estopped to question sale by receiver cannot be set up by demurrer.* In an action by a creditor under section 25 of the Corporation act, attacking the appointment of a receiver and a sale of assets by him, the defense that the creditor is estopped by having accepted its share of the proceeds of the sale cannot be set up by demurrer but must be made by plea or answer, where the creditor's bill merely alleges that a certain per cent of its claim has been paid and does not disclose by whom or in what manner it was paid.

APPEAL from the Circuit Court of LaSalle county; the Hon. EDGAR ELDREDGE, Judge, presiding.

GROSSBERG & HAFFENBERG, and L. W. BREWER, for appellant.

DUNCAN & O'CONOR, RECTOR C. HITT, and McDOUGALL & CHAPMAN, for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Appellant, a corporation, on behalf of itself and all other creditors of the S. G. Gay Company, filed a bill in chancery in the circuit court of LaSalle county May 9, 1918, under section 25 of the Corporation act, praying for the appointment of a receiver for the Gay Company, an accounting against the several parties defendant, the dissolution of the corporation and the fixing of stockholders' liability. The Ottawa Banking and Trust Company answered the bill. The First National Bank of Ottawa, the First Trust Company of Ottawa, and Fred A. Hatheway and Charles C. Wilcox, jointly, filed a demurrer to the bill. The

National City Bank of Ottawa, Al F. Schoch, G. Barnard, K. Schmid, Simeon G. Gay and Albert C. Bradish also filed separate demurrers. All the demurrers were sustained and the bill was dismissed for want of equity. Appellant elected to stand by its bill and has prosecuted this appeal.

The bill of complaint alleged, in substance, the following facts: The S. G. Gay Company was organized as an Illinois corporation, with a capital stock of $200,000. Its principal place of business was in the city of Ottawa. Its object was the manufacture of carriages, buggies, vehicles, automobiles, auto trucks and motor wheels. It began doing business about November 8, 1913, and continued until September 11, 1915, when it ceased and has done no business since. When it ceased doing business it owed debts to the amount of $74,123.60, about twenty-five per cent of which has since been paid, leaving a balance of its debts of $55,550.45 and interest thereon, of which the sum of $3043.04 and interest is due appellant, less $752.60 which has been paid. The par value of the shares of stock was fixed at $100 per share. At the organization of the company L. W. Nichols and C. T. Bangs subscribed for five shares of stock each, K. Schmid and G. Barnard one share each and Simeon G. Gay 1988 shares. When the company ceased doing business Simeon G. Gay was the holder of 1160 shares, Albert C. Bradish, L. W. Nichols, C. T. Bangs and G. Barnard were each the holder of five shares and K. Schmid of one share. Gay has not fully paid for his stock but is still indebted upon his subscription in the sum of $80,700.

It is further alleged in the bill that on September 11, 1915, Simeon G. Gay, as a stockholder of said company, filed a bill in said circuit court against the S. G. Gay Company alone, praying that a receiver may be appointed to take charge of the books, property and assets, of every kind, of the company, and apply the same, under the direction of the court, to the liquidation of its debts; that he

may be authorized, until the further order of the court,. to continue the business of the company, with all other powers usually applicable to and exercised by receivers, and for other and further relief. A copy of the bill of Gay is filed with and as part of the original bill in this case. That bill alleged the due incorporation of said company with a capital stock of $200,000, and stated its objects and place of business and that all of its stock had been fully paid for; that the complainant was the owner of 1160 shares of such stock, of the par value of $116 each, and that Bert Bradish, L. W. Nichols, C. T. Bangs and G. Barnard each owned five shares, K. Schmid one share, and that the company owned the remaining shares. The bill stated the property of the company, consisting of real estate, buildings, improvements, engines, boilers, machinery and fixtures, was of the value of more than $90,000; that for the purpose of furnishing funds to carry on and conduct its business it became and is indebted to the First National Bank of Ottawa, the National City Bank of Ottawa and the Ottawa Banking and Trust Company of Ottawa in large sums of money, and for the purpose of purchasing material it also became indebted to manufacturers in large sums of money; that the total amount of its indebtedness for such purposes is $74,123.60; that there is contained in its manufacturing building a large amount of raw material of the value of $67,381.03, some of which is in a state of partial completion and some in a raw state; that the total value of the assets of the company is $154,271.63; that if its stock were sold in its present state it would result in great loss and damage to its creditors and stockholders; that the actual amount of cash owned by it is about $25, and that it is impossible for the company to borrow money with which to complete the manufacture and marketing of raw material; that if a receiver be appointed to take care of the business of the company, to complete and market the partially manufactured material and to sell or manufacture the

raw material, the loss and damage to the creditors and stockholders would in a large measure be prevented and its assets conserved; that it is impossible for the company to obtain any further funds for the continuance of its business and the payment of the wage earners; that some of the indebtedness is represented by judgment notes, and complainant fears that unless a receiver be appointed as prayed, judgments may be entered upon the same and the assets of the company sacrificed.

It is further alleged in the original bill that Fred Hatheway, receiver under the former bill, has taken possession of all the assets of the company aforesaid; that on April 29, 1916, the First Trust Company of Ottawa and Albert F. Schoch, *alias* Al F. Schoch, through color of conveyance by Hatheway as pretended receiver, obtained possession of all said property, real and personal, for a pretended consideration of $10,000; that in so purchasing and possessing said property Schoch and said trust company acted for divers parties, the National City Bank of Ottawa, the First National Bank of Ottawa and the Ottawa Banking and Trust Company; that Schoch was at such time, and is now, vice-president and director of the National City Bank; that afterwards, by pretended deed of September 1, 1917, the First Trust Company pretended to convey to Charles C. Wilcox, trustee, the plant and lot of said company, which deed is recorded; that the Ghent Motor Car Company and the Victor Motor Car Company, corporations, obtained possession of said real estate, machinery, plant and equipment by deed, lease, bill of sale or contract from Schoch and the First Trust Company; that all of said real estate, machinery, equipment and buildings are substantially in the same form and character as they existed September 11, 1915, when the company ceased business, and are still in the hands and possession of the Victor Motor Car Company and are of substantially the same value; that on September 9, 1915, a number of the creditors of the company, among whom

289 – 27

were the representative of appellant and officers and other duly authorized agents of said several banks, met for the purpose of advising and conferring with one another upon their course of action toward the company for the liquidation and payment of its debts; that in said meeting it was agreed among all said creditors that in consideration of mutual forbearance upon the part of each of them in refraining from securing a preference or advantage over the remaining creditors said banks should be, and then were, entrusted and empowered to bring and have charge of all proceedings that might be found necessary against the company, and that all proceedings whatever should be for the benefit of all alike and *pro rata;* that said banks wrongfully and fraudulently, and in disregard of their agreement, caused judgments to be entered by confession against the company in said court for the First National Bank in the sum of $15,565.59 and for the National City Bank for $18,960.66, which latter judgment was also against Simeon G. Gay, and execution issued thereon and was returned "no property found;" that plaintiff therein subsequently entered satisfaction in full thereof as to Gay, and it is averred that the satisfaction of the judgment as to Gay constituted a satisfaction as to the defendant corporation and that said judgment is no lien, but that if the same be held a lien, plaintiff should only recover thereon its *pro rata* share with the other creditors having no judgments. It is further averred that all the acts of Hatheway as pretended receiver, and all orders in said cause, should be held null and void, and that they conferred no right or title on the receiver in any of the property of the company and did not authorize him in any manner to sell or dispose of the same and pass title thereto; that the Ghent Motor Car Company and the Victor Motor Car Company obtained no title or interest in said property against the creditors; that Hatheway, Schoch, the Ghent Motor Car Company, the National City Bank, the First National Bank, the Ottawa Banking and Trust Com-

pany, the First Trust Company, Charles C. Wilcox, trustee, and Simeon G. Gay, should each and all of them, by reason of said facts, be held liable for the debts of the company, and should be required to fully account for any of the property or assets of the company which passed into their hands, and that each and all of them, after receiving credit for such amount or amounts as they may be equitably entitled to, should be adjudged and decreed to be so liable and to pay the remainder of such debts to the receiver, after exhausting the assets of the company.

Omitting the allegations concerning the former bill filed by Hatheway, the receiver, the bill stated a good cause of action under section 25 of the Corporation act. That section provides: "If any corporation or its authorized agents shall do, or refrain from doing any act which shall subject it to a forfeiture of its charter or corporate powers, or shall allow any execution or decree of any court of record, for a payment of money, after demand made by the officer, to be returned 'No property found,' or to remain unsatisfied for not less than ten days after such demand, or shall dissolve or cease doing business, leaving debts unpaid, suits in equity may be brought against all persons who were stockholders at the time, or liable in any way, for the debts of the corporation, by joining the corporation in such suit; and each stockholder may be required to pay his *pro rata* share of such debts or liabilities to the extent of the unpaid portion of his stock, after exhausting the assets of such corporation. And if any stockholder shall not have property enough to satisfy his portion of such debts or liabilities, then the amount shall be divided equally among all the remaining solvent stockholders. And courts of equity shall have full power, on good cause shown, to dissolve or close up the business of any corporation, to appoint a receiver therefor who shall have authority  *  *  * to sue in all courts and do all things necessary to closing up its affairs, as commanded by the decree of such court."

The defendant corporation and all other parties mentioned in the bill are made parties defendant to the bill.

The appellant's contention is that in the proceeding of Simeon G. Gay against the S. G. Gay Company for the appointment of a receiver, etc., the court was without jurisdiction of the subject matter, and that, therefore, all the acts of the receiver are a nullity. Appellees' contention is that the circuit court had power to appoint a receiver under the bill of Simeon G. Gay and that the proceedings in that case constitute a bar to the present proceedings, which are, in effect, a collateral attack upon the prior proceedings. It is admitted by appellees in their argument that if the appointment of Hatheway as receiver was a nullity he acquired no title to any of the property and so could convey none.

It is true that where a court has jurisdiction both of the subject matter and the necessary parties its appointment of a receiver cannot be assailed in a collateral proceeding, however erroneous it may be. (*Richards* v. *People,* 81 Ill. 551.) Courts of chancery have no general power to appoint receivers of corporations, and the general rule is that they can only appoint receivers where expressly authorized by the statute. (*Coquard* v. *National Linseed Oil Co.* 171 Ill. 480.) Courts are particularly disinclined to appoint a receiver for misconduct or mismanagement of a corporation or for the purpose of merely preserving its assets where the application is made by stockholders, for the reason that the sovereign does not furnish public agencies for the carrying on of private enterprises. (5 Thompson on Corporations, sec. 6347; 34 Cyc. 84, par. *c.*) There are exceptions to this general rule. A stockholder may invoke and set in motion the powers of a court of equity to appoint a receiver where the corporation is fraudulently mismanaged by the officers, whereby it is in imminent danger of insolvency or has been rendered insolvent by reason of such mismanagement. (34 Cyc. 86.) It has been expressly held by this court in *People* v. *Weigley,* 155 Ill. 491, that a stockholder

may not invoke the jurisdiction of a court of equity to take charge of all the company assets by a receiver, and thus defeat the action of the creditors, under said section 25. Appointing a receiver to take possession of the assets of a corporation and to distribute them is tantamount to dissolving the corporation by decree in equity. When the property of a corporation is all sold and distributed and its officers are powerless to raise further means to carry on its business the corporation is powerless to exercise its corporate franchise. It is then for all practical purposes dissolved.

The former bill appointing Hatheway receiver did not even allege insolvency. There are no allegations in the bill tending to show that the corporate property would be wasted, destroyed, injured or removed by its officers or other persons or that the officers were guilty of any fraud or misconduct of any kind that in anywise endangered the corporate property. The only complaint is that the corporation, which is alleged or shown to be solvent, will be endangered by creditors who might obtain judgments on their just demands and undertake to enforce the collection of the same by levy and sale. It alleges that the corporation officers are powerless to borrow money or obtain money or prevent such threatened danger, but there is no showing in the bill how or in what manner a receiver of the court could do more in that direction than the officers had done or could do. The proceedings of the court under the receiver tend to show that no thought or attempt was made by the receiver to borrow money or to further conduct the business. It has been simply a proceeding to dispose of the property and pay its debts without actually dissolving the corporation. The whole proceeding operated as a hindrance to creditors operating under section 25 of the Corporation act. The court clearly had no jurisdiction by reason of the allegations of the bill, all of which are above set forth, to appoint a receiver to take charge of and distribute the assets. To entertain such a bill as against creditors would

absolutely bar them of their remedy, under section 25 of the Corporation act, that is given them expressly by the statute in case a stockholder should bring a bill of that character before the creditor could file his bill.

The court having no jurisdiction to entertain the bill and to appoint a receiver with the powers aforesaid, the decree was void and the receiver acquired no title to any of the property and therefore could convey no title. (*Fitch* v. *Wetherbee,* 110 Ill. 475.) The decree being absolutely void was open to collateral attack. (*People* v. *Weigley, supra.*) In any judicial sale by the receiver the rule of *caveat emptor* must be applied. *Hutson* v. *Wood,* 263 Ill. 376; *Manternach* v. *Studt,* 240 id. 464.

Appellees further insist that according to the allegations of the bill appellant has received about one-fourth of its claim from the proceeds of a judicial sale of the property by the receiver, and that having accepted its full proportion from the receiver on the distribution of such proceeds, and having full knowledge, at the time, of the sale of the assets of the corporation and of the order of the court, it is now estopped to question the sale so made, and they rely on the case of *Marshal* v. *McDermitt,* L. R. A. (1907C) 888, as authority for their position. The facts disclosed by appellant's bill do not show that appellant received payment on its claim in the manner aforesaid. The allegations of the bill are, simply, in that regard, that about twenty-five per cent of its claim had been paid, and by whom or in what manner it was paid is not disclosed. Such a defense, therefore, cannot be made by demurrer, but if such defense exists it should be made by plea or answer and not by demurrer.

The court erred in sustaining the demurrers and dismissing the bill for want of equity, and for the reasons above given the decree of the circuit court is reversed and the cause remanded for further proceedings.

*Reversed and remanded.*