(No. 19243.—

ALEXANDER H. STEENROD, Receiver, Plaintiff in Error, *vs.*
THE L. M. GROSS COMPANY *et al.* Defendants in Error.

*Opinion filed April 20, 1929.*

R. R. TIFFANY, for plaintiff in error.

C. W. MIDDLEKAUFF, for defendants in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The circuit court of Stephenson county entered an order on September 7, 1926, finding Alexander H. Steenrod guilty of contempt of court and committing him to the jail of Stephenson county until he paid into court $2500, with interest, according to the tenor of two receiver's certificates, amounting to $2745.25 on September 7, 1926, and until he

should make report to the court of his acts as receiver in the cause of A. R. Dry *vs.* L. M. Gross Company. He appealed to the Appellate Court for the Second District, which affirmed the judgment, and upon his petition a writ of *certiorari* was awarded to certify the case to this court for review.

The plaintiff in error was appointed receiver by the circuit court of Stephenson county on December 10, 1924, on a bill filed on December 9 by A. R. Dry against the L. M. Gross Company and a number of individuals alleged to be stockholders or creditors of the corporation. The bill alleged the incorporation of the company with an authorized capital stock of $20,000 and the existence of incumbrances on its property by various chattel mortgages; that the business of the company was the operation of a garment factory and the manufacture of women's dresses, aprons and other wearing apparel; that it had on hand many orders for goods to be delivered and a great deal of raw material and partly finished products; that the corporation was overdrawn at its bank, and its accounts receivable, merchandise inventory, machinery and equipment inventory and general assets, without depreciation, wear or tear, were approximately equal to its liabilities, a large portion of the inventory consisting of raw material not being available as assets for payment of debts unless made into completed products, and that the equipment of the company was of little or no value except for actual use, as a whole, for the purpose intended; that the business, if properly managed and supplied with capital, would be a profitable business; that raw material now owned, if capital were available, could be profitably manufactured and shipped upon orders on hand, and in that way produce from two to three times as much money for payment of debts as if sold out in its present form; that the factory had suspended operation for lack of cash to meet its pay-roll and was standing idle and unused; that Arthur A. Haas, trustee under the insecurity

clause in his chattel mortgage for $4000, had taken and held possession of the factory and all the property of the corporation; that divers creditors are threatening suits, and if such suits proceed to judgment and execution they will result in inequality among the creditors and waste and dissipate the property, which, if properly managed and kept together, in the end probably would be sufficient to pay the claims of the creditors in full. The bill prayed for the appointment of a receiver of the assets of the corporation, to take charge of and manage them and operate the business as directed by the court, and to that end, if necessary and if ordered by the court, to issue receiver's certificates in proper and legal form; that the amounts due the various creditors and the nature, character and extent of their liens be ascertained and determined by the decree of the court; that the property of the corporation be applied as may be equitable, legal and just; that an audit be had to determine whether any stockholder is liable on account of stock held or owned by him, and that after the payment of all the debts of the corporation the same be wound up and its assets distributed among its stockholders in accordance with their various rights and interests. The Lawrence M. Stein Company of Chicago, Arthur A. Haas, trustee, and the L. M. Gross Company, by L. M. Gross, its president, entered their general appearance and consented that a receiver be forthwith appointed as prayed.

The court having considered the bill and heard arguments of counsel without service of process on any defendant, found that "it is reasonable, equitable and proper that a receiver be forthwith appointed for assets, property and estate of L. M. Gross Company, without bond from the complainant," and ordered that Alexander H. Steenrod be appointed receiver, with all the powers, duties and responsibilities of receiver in accordance with law, giving bond to the L. M. Gross Company, for use of the company, its creditors and stockholders, in the sum of $10,000, with

sureties to be approved by the court within ten days, and that he present to and file with the clerk of the court a balance sheet showing the condition of the company, and report to the court his recommendations as to the advisability of continuing the business of the corporation temporarily. On the next day the receiver's bond was approved and the receiver filed his report, including an estimated balance sheet as of November 14, 1924, showing assets of $12,960 and liabilities of the same amount, including the two hundred shares of capital stock outstanding, at their book value of $1810. The report also included a statement of the property of the company, the material and orders on hand for the products of the company, which would permit the profitable using up of a great portion of the raw material on hand and the profitable merchandising of the finished goods on hand. It stated that to continue the manufacture of the goods raw materials were needed and would cost from $1200 to $1500; that girls must be employed to labor in the factory and must be paid promptly each week, and power, heat, light, telephone, telegraph, postage and other miscellaneous expenses must be met promptly as they accrue; that the only profitable way of disposing of material and merchandise on hand is to manufacture them into finished products and apply them to orders on hand, and that the season of the year was such that manufacturing should proceed immediately. The receiver prayed for an order authorizing and directing him to conduct the business of the company until the further order of the court, to employ labor, buy materials as may be necessary therefor, and to that end to issue receiver's certificates for borrowed money to the amount of $2500. On the same day, upon the verified petition of the receiver, the court having considered the same and been orally advised in open court by the receiver and heard arguments of counsel, found that it was for the best interest of the corporation and its creditors that the corporation's business be

temporarily carried on and its contracts for the manufacture and sale of merchandise be performed, and that the receiver should temporarily finance the operation of the plant by the issue of receiver's certificates. It was ordered that the receiver be empowered and directed to carry on the business of the company until the further order of the court, and he was authorized and directed to issue receiver's certificates for any money necessary to enable him to carry on the business, not to exceed $2500; and to enable him to borrow money on such certificates it was further ordered that the certificates should, when issued, draw interest at the rate of six per cent per annum and should be a paramount lien upon all of the assets of the corporation.

Four months later, on April 11, 1925, the receiver filed a sworn report, which included a condensed statement of the assets and liabilities on March 11, 1925, from which it appeared that in the three months since his appointment he had succeeded in reducing the assets to $7190.54 and increasing the liabilities to $13,626.48. Thereupon, on the same day, the cause was heard upon the bill taken as confessed and a decree was entered dissolving the corporation, directing the sale by the receiver, at public sale, of all the assets, disincumbered of all liens; that all creditors file proofs of their claims under oath with the clerk within sixty days, and that the receiver should bring the money resulting from the sale, together with the full report of his acts, into court on or before the second Monday of the next June term. On May 8, 1925, the receiver filed a report of sale of the whole of the assets of the corporation to Patrick Iron, Kenneth H. Knowlton, Arthur A. Haas and A. J. Clarity for their bid of $4500 and that the purchasers had paid the purchase price to the receiver. This report was approved and the sale confirmed. Afterward, more than a year later, the Second National Bank of Freeport filed its petition showing that it was the holder of two receiver's certificates for the aggregate amount of $2500;

that the receiver had reported to the court on May 8, 1925, that he had sold the assets of the corporation for $4500 and delivered them to the purchaser and that the purchase price had been paid to him; that the receiver had not paid such receiver's certificates, and praying that an order be entered that the receiver be required to report, and that an order be entered directing him to pay the amount of the two certificates, and interest, and an order was entered directing the receiver to pay the bank the full amount of principal and interest due according to the terms of the certificates and make report. A second petition of the bank was filed showing that the receiver had not paid the certificates, and praying that a rule be entered requiring him to show cause, within a reasonable time, why he should not be punished for contempt of court for neglect and refusal to comply with the order. The receiver answered this petition, showing that while he had reported to the court that the purchase price had been paid to him for the assets of the corporation, yet he had not received it, the fact being that certain persons, whom he named in his answer, had made various subscriptions to be used for the organization of a corporation to take over the assets and business of the L. M. Gross Company, and the bid of $4500 was made on behalf of the corporation which was so to be organized. The receiver, relying upon the promises of the subscribers to the capital stock, reported to the court the sale of such assets for the sum of $4500 and reported that that sum had been paid to him; that the subscribers to such capital stock had not paid their subscriptions except as to a part of them, the corporation was not organized, and the receiver had received no part of the $4500 though he had made every effort, short of actual litigation, to collect it; that he had no funds with which to pay the sums required of him and did not disregard the order of the court for any lack of respect for the court but only because he was unable to comply with it. The court entered its order re-

quiring Steenrod to pay the certificates by July 28 and make report by that date. On August 9 the bank filed another petition showing the order had not been complied with, and praying for a rule on the receiver to show cause why he should not be punished for contempt of court. This petition was heard on September 7 and the order now before us was entered.

The court was without jurisdiction to enter this order. The bill for the appointment of a receiver conferred no jurisdiction on the circuit court. Courts of chancery have no general power to appoint receivers of corporations. The general rule is that they can only appoint receivers where expressly authorized by the statute. Appointing a receiver to take possession of the assets of a corporation and to distribute them is tantamount to dissolving the corporation by decree in equity. (*Blanchard Bro. & Lane* v. *Gay Co.* 289 Ill. 413.) There was no charge in the bill of fraudulent mismanagement of the corporation by the officers whereby it was in imminent danger of insolvency or had been rendered insolvent by such mismanagement. A court of chancery is without jurisdiction to decree the dissolution of a corporation in the exercise of its general equity powers but is limited in that respect to the jurisdiction conferred upon it by statute. That jurisdiction is found in section 54 of the general Corporation act, and it is the same as the jurisdiction of the same subject matter conferred by section 25 of the act of 1872 concerning corporations, as amended by the laws of 1877, page 66, under which it was expressly held in *People* v. *Ames*, 155 Ill. 491, that a stockholder may not invoke the jurisdiction of a court of equity to take charge of all the company assets by a receiver and thus defeat the action of the creditors under section 25, and that a decree appointing a receiver in such a case is absolutely void for want of jurisdiction of the subject matter and is open to collateral attack upon a proceeding for contempt in disobedience of it.

In the bill under which the plaintiff in error was appointed receiver it did not appear that the corporation was insolvent or that its affairs were being mismanaged. It did appear that it was near insolvency, but it did not appear that the court or its receiver could manage the corporate affairs better than its officers, and the courts do not appoint receivers for the purpose of merely preserving the assets of the corporation where the application is made by stockholders, for the reason that the sovereign does not furnish public agencies for the carrying on of private enterprises. (*Blanchard Bro. & Lane* v. *Gay Co. supra.*) The relief sought by the bill in this case was the settlement of the affairs of the corporation, the application of its assets to the payment of its debts, and, after the payment of its debts, the winding up of its affairs and the distribution of its assets among its stockholders. The appointment of a receiver was a mere incident to that relief to enable the court to take possession of the property and business of the company and finally wind up its affairs. The court had no general equity powers in the case. It was without jurisdiction, under the statute, to grant the ultimate relief prayed by the bill, had no power to appoint the receiver and order him to take possession and control of the assets, and being wholly without jurisdiction in the case its orders were void.

Counsel for the defendants in error contends that "the court having jurisdiction of the parties and of the subject matter, it was a judicial function granted by law to the court to determine whether there was a good cause shown by the bill to dissolve or close up the business of the corporation and to appoint a receiver." He overlooks the fact that the subject matter of the bill was not within the general equity jurisdiction of a court of chancery but was a statutory jurisdiction, which must be made to appear on the record; that none of the causes for which, by the statute, courts of equity are authorized to take charge of cor-

porations and close them up are alleged; that the court was without jurisdiction, and that it has been expressly held that, having no general equity powers and the bill wholly failing to bring the case within the provisions of the statute, the court was without jurisdiction of the subject matter.

The judgment is reversed and the cause remanded to the circuit court of Stephenson county, with directions to enter an order discharging the plaintiff in error.

*Reversed and remanded, with directions.*